IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-660

 No. COA20-712

 Filed 7 December 2021

 Cabarrus County, No. 19 CRS 052709

 STATE OF NORTH CAROLINA

 v.

 DANIEL RAYMOND JONAS, Defendant.

 Appeal by Defendant from judgment entered 3 March 2020 by Judge Martin

 B. McGee in Cabarrus County Superior Court. Heard in the Court of Appeals 21

 September 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Jessica
 Macari, for the State.

 Sigler Law, PLLC, by Kerri L. Sigler, for defendant-appellant.

 MURPHY, Judge.

¶1 When a defendant pleads guilty but does not plead guilty pursuant to a plea

 arrangement with the State, he is not required to give the State notice of his intent

 to appeal before plea negotiations are finalized to pursue his statutory right to appeal

 a final order denying a motion to suppress pursuant to N.C.G.S. § 15A-979(b). We

 have jurisdiction to hear the merits of Defendant’s appeal of his Motion to Suppress.

¶2 A traffic stop made without reasonable articulable suspicion is
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 unconstitutional as it violates the Fourth Amendment. Evidence illegally obtained

 as a result of an unconstitutional traffic stop must be suppressed. Reviewing the

 totality of the circumstances, law enforcement did not have reasonable articulable

 suspicion to stop Defendant and, as such, the traffic stop was unconstitutional. The

 trial court erred by denying Defendant’s Motion to Suppress.

 BACKGROUND

¶3 On 28 June 2019, around 10:00 p.m., Officer Andrew Berry of the Concord

 Police Department was on routine patrol of Highway 49 South when he noticed a

 vehicle with three occupants pull out ahead of him from a trucking company parking

 lot. Due to the empty parking lot, the fact the gate was closed, and that there was

 only one light on in the parking lot, Officer Berry believed the business was closed,

 which “kind of raised [his] suspicion on why the vehicle [was] pulling out of there.”

 Officer Berry followed the vehicle and, when he was close enough behind it, he noticed

 the vehicle displayed a transporter plate, which he had “never seen . . . on a car.”

 Officer Berry ran the plate through his computer system, and the plate came back as

 “not assigned to [a] vehicle.”

¶4 Defendant Daniel Raymond Jonas was a passenger in the vehicle as well as its

 registered owner. “[B]ased on the fact that the vehicle was displaying [what Officer

 Berry believed to be] a fictitious tag, and [he was] attempting to determine what tag

 was supposed to be on the vehicle[,]” Officer Berry initiated a traffic stop. During the
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 stop, the Concord Police Department canine unit arrived and conducted an open-air

 sniff around the vehicle. Law enforcement located 0.1 grams of methamphetamine

 in a backpack in the trunk of the vehicle.

¶5 Defendant was subsequently indicted for possession of a Schedule II controlled

 substance. Prior to trial, Defendant filed a Motion to Suppress, requesting any

 evidence seized in connection with Officer Berry’s traffic stop on 28 June 2019 be

 suppressed as fruit of the poisonous tree because Officer Berry lacked a reasonable

 articulable suspicion to stop the vehicle. After a hearing on the motion, the trial court

 entered an order denying Defendant’s Motion to Suppress (“Order”), which contained

 the following findings of fact:

 1. [Defendant] is charged with [p]ossession of a Schedule II
 [c]ontrolled [s]ubstance as a result of an interaction he had
 with Officer Andrew Berry of the Concord Police
 Department on [28 June 2019] in Concord, North Carolina.

 2. That on [28 June 2019], at approximately 10:00 PM,
 Officer Berry was on duty within his jurisdiction driving on
 NC Highway 49 when a vehicle displaying a transporter
 registration plate pulled onto Highway 49 in front of him
 from [] a trucking company. Officer Berry believed the
 business was closed because the business’s office was dark
 and there were no other vehicles in the office parking lot.

 3. Even though [Defendant’s] vehicle did not have a trailer
 attached to it, Officer Berry was aware of a recent trailer
 theft in the area.

 4. Officer Berry ran the transporter registration plate and
 the plate came back as not assigned to a vehicle.
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 5. Officer Berry initiated a traffic stop on the vehicle.

 6. The [trial court] is considering [] Defendant’s motion to
 suppress filed on [31 October 2019].

 The Order contained the following relevant conclusions of law:

 3. The vehicle was exiting from a closed business with no
 lights visible to the [roadway].[1]

 4. [N.C.G.S. §] 20-79.2 provides: “The Division of Motor
 Vehicles may issue a transporter plate authorizing the
 limited operation of a motor vehicle in the circumstances
 listed in this subsection. A person who received a
 transporter plate must have proof of financial
 responsibility that meets the requirements of Article 9A of
 this Chapter.” The statute goes on to list ten (10) limited
 circumstances in which a person to whom a transporter
 plate and the vehicle bearing the plate may be operated.

 5. The officer had reasonable articulable suspicion to stop
 the vehicle in question to ensure its compliance with
 N.C.G.S. § 20-79.2.

¶6 Following the denial of the Motion to Suppress, Defendant pled guilty2 to

 possession of a Schedule II controlled substance and received a suspended sentence

 of 6 to 17 months. After the trial court announced its judgment, through counsel,

 1 We note Conclusion of Law 3 is more properly characterized as a finding of fact. See
 In re Helms, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations and marks omitted)
 (“[A]ny determination requiring the exercise of judgment or the application of legal principles
 is more properly classified a conclusion of law. Any determination reached through logical
 reasoning from the evidentiary facts is more properly classified a finding of fact.”). However,
 this distinction is not relevant to our analysis.
 2 Defendant did not plead guilty pursuant to a plea arrangement with the State. See

 Part A, infra at ¶ 9.
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

Defendant orally gave notice of appeal of the Order. In open court, following the trial

court’s acceptance of his guilty plea, counsel stated: “Your Honor, [Defendant] would

enter notice of appeal. I filed written notice[3] with regard to the motion to suppress.

I just wanted to put it on the record now, and I’ll be filing a notice.” Defendant has

also filed a petition for writ of certiorari with this Court, “should [we] find that trial

counsel failed to give proper notice of appeal following the denial of [Defendant’s]

suppression motion as required by State v. Reynolds, 298 N.C. 380, 397, 259 S.E.2d

843, 853 (1979)[.]” This matter was calendared before us on 21 September 2021;

however, on 22 September 2021, we invited the parties to file supplemental briefs

addressing

 whether our Supreme Court’s holding in State v. Reynolds-
 ‘when a defendant intends to appeal from a suppression
 motion denial pursuant to N.C.G.S. [§] 15A-979(b), he must
 give notice of his intention to the prosecutor and the trial
 court before plea negotiations are finalized or he will waive
 the appeal of right provisions of the statute’-applies in a
 situation where, as here, Defendant’s plea of guilty is not
 ‘part of a plea arrangement.’ State v. Reynolds, 298 N.C.
 380, 397, 259 S.E.2d 843, 853 (1979), cert. denied, 446 U.S.
 941, 64 L. Ed. 2d 795 (1980)[.]

We further cited to State v. Tew, 326 N.C. 732, 734-35, 392 S.E.2d 603, 604-05 (1990);

State v. McBride, 120 N.C. App. 623, 625, 463 S.E.2d 403, 404 (1995), aff’d per curiam,

 3 A written notice of appeal does not appear anywhere in the Record on appeal.
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 344 N.C. 623, 476 S.E.2d 106 (1996); Form AOC-CR-300 paragraph 20 (Rev. 5/18);

 Record page 17 at paragraph 20; and page 7 lines 4-10 of the plea transcript.

 ANALYSIS

 A. Appellate Jurisdiction

¶7 “In North Carolina, a defendant’s right to pursue an appeal from a criminal

 conviction is a creation of state statute.” McBride, 120 N.C. App. at 624, 463 S.E.2d

 at 404. Generally, a defendant who pleads guilty does not have a right to appeal. See

 N.C.G.S. § 15A-1444(e) (2019). However, N.C.G.S. § 15A-979(b) provides an

 exception for defendants appealing a final order denying a motion to suppress. See

 N.C.G.S. § 15A-979(b) (2019) (emphasis added) (“An order finally denying a motion

 to suppress evidence may be reviewed upon an appeal from a judgment of conviction,

 including a judgment entered upon a plea of guilty.”).

¶8 In Reynolds, our Supreme Court interpreted this exception and held that

 “when a defendant intends to appeal from a suppression motion denial pursuant to

 [N.C.G.S. §] 15A-979(b), he must give notice of his intention to the prosecutor and the

 [trial] court before plea negotiations are finalized or he will waive the appeal of right

 provisions of the statute.” Reynolds, 298 N.C. at 397, 259 S.E.2d at 853 (emphasis

 added). Our Supreme Court reasoned:

 We do not believe that [N.C.G.S. § 15A-979(b)] . . .
 contemplates a factual pattern . . . which would cause the
 State to be trapped into agreeing to a plea bargain . . . and
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 then have the defendant contest that bargain.

 As stated by the United States Supreme Court, “Once the
 defendant chooses to bypass the orderly procedure for
 litigating his constitutional claims in order to take the
 benefits, if any, of a plea of guilty, the State acquires a
 legitimate expectation of finality in the conviction thereby
 obtained.”

 The plea bargaining table does not encircle a high stakes
 poker game. It is the nearest thing to arm’s length
 bargaining the criminal justice system confronts. As such,
 it is entirely inappropriate for either side to keep secret any
 attempt to appeal the conviction.

 Id. (quoting Lefkowitz v. Newsome, 420 U.S. 283, 289, 43 L. Ed. 2d 196, 202 (1975)).

¶9 The State argues Defendant did not comply with the Reynolds notice

 requirement because his “intent to appeal came after the entry of the plea” and

 “notice of the intention to appeal is required before the conclusion of plea

 negotiations.” (Emphasis omitted). However, Defendant did not agree to plead guilty

 as part of a plea arrangement, as indicated on the Transcript of Plea, reproduced

 below:
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 Defendant also testified during his plea colloquy that he did not plead guilty pursuant

 to a plea arrangement with the State:

 THE COURT: Have you agreed to plead guilty as part of a
 plea arrangement?

 [DEFENDANT]: Yes, sir. Oh. No, sir.

 THE COURT: No. There’s not one listed here.

 As Defendant did not plead guilty pursuant to a plea arrangement with the State, he

 was not required to comply with the Reynolds notice requirement in order to invoke

 his statutory right to appeal.

¶ 10 The concerns that were present in Reynolds are not present here. Defendant
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 neither received nor accepted the benefits of a plea offer from the State. The State

 was not “trapped into agreeing to a plea bargain” only to later “have [] [D]efendant

 contest that bargain.” Id. Defendant was not required to give the State and the trial

 court notice of his intent to appeal before plea negotiations were finalized because

 there were no plea negotiations. Defendant has a statutory right to appeal the Order

 pursuant to N.C.G.S. § 15A-979(b), and we dismiss his petition for writ of certiorari

 as moot.

 B. Motion to Suppress

¶ 11 Having established that this Court has proper appellate jurisdiction, we turn

 to the merits of Defendant’s appeal. Defendant’s sole argument on appeal is that the

 trial court erred by denying his Motion to Suppress because Officer Berry did not have

 a reasonable articulable suspicion to conduct the traffic stop.

¶ 12 Our review of a trial court’s denial of a motion to suppress is “strictly limited

 to determining whether the trial [court’s] underlying findings of fact are supported

 by competent evidence, in which event they are conclusively binding on appeal, and

 whether those factual findings in turn support the [trial court’s] ultimate conclusions

 of law.” State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). “Where no

 exception is taken to a finding of fact by the trial court, the finding is presumed to be

 supported by competent evidence and is binding on appeal.” State v. Miller, 243 N.C.

 App. 660, 663, 777 S.E.2d 337, 340 (2015). “While the trial court’s factual findings
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 are binding [on appeal] if sustained by the evidence, the [trial] court’s conclusions

 based thereon are reviewable de novo on appeal.” State v. Parker, 137 N.C. App. 590,

 594, 530 S.E.2d 297, 300 (2000).

¶ 13 Defendant does not challenge any of the Order’s findings of facts, and they are

 deemed to be supported by competent evidence and binding on appeal. See Miller,

 243 N.C. App. at 663, 777 S.E.2d at 340. Rather, Defendant challenges Conclusion

 of Law 5, and argues “the trial court erred by denying [his] motion to suppress

 because there was no reasonable articulable suspicion for the traffic stop.”

 Conclusion of Law 5 states:

 The officer had reasonable articulable suspicion to stop the
 vehicle in question to ensure its compliance with N.C.G.S.
 § 20-79.2.

¶ 14 The Fourth Amendment of the United States Constitution protects individuals

 “against unreasonable searches and seizures[.]” U.S. Const. amend. IV. The North

 Carolina Constitution provides the same protection. N.C. Const. art. I, § 20; State v.

 Elder, 368 N.C. 70, 73, 773 S.E.2d 51, 53 (2015) (“Though Article I, Section 20 of the

 North Carolina Constitution contains different language, it provides the same

 protection against unreasonable searches and seizures [as the Fourth

 Amendment].”). A traffic stop is a seizure “even though the purpose of the stop is

 limited and the resulting detention quite brief.” Delaware v. Prouse, 440 U.S. 648,

 653, 59 L. Ed. 2d 660, 667 (1979). Consistent with the Fourth Amendment, “an officer
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 may . . . conduct a brief, investigatory stop when the officer has a reasonable,

 articulable suspicion that criminal activity is afoot.” Illinois v. Wardlow, 528 U.S.

 119, 123, 145 L. Ed. 2d 570, 576 (2000); see also State v. McClendon, 350 N.C. 630,

 636, 517 S.E.2d 128, 132 (1999).

¶ 15 “Reasonable suspicion is a less demanding standard than probable cause and

 requires a showing considerably less than preponderance of the evidence.” State v.

 Barnard, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (marks omitted), cert. denied, 555

 U.S. 914, 172 L. Ed. 2d 198 (2008).

 [Our Supreme Court] has determined that the reasonable
 suspicion standard requires that the stop be based on
 specific and articulable facts, as well as the rational
 inferences from those facts, as viewed through the eyes of
 a reasonable, cautious officer, guided by his experience and
 training. Moreover, a court must consider the totality of
 the circumstances–the whole picture in determining
 whether a reasonable suspicion exists.

 Id. (citation and marks omitted).

¶ 16 During the Motion to Suppress hearing, Officer Berry testified to the

 following:

 [DEFENSE COUNSEL:] Can you tell us about what led up
 to you encountering [Defendant].

 [OFFICER BERRY:] . . . . I noticed a car pull out in front of
 me coming from a parking lot to the left. . . . .

 And [as] soon as I saw him pull out, I remember looking to
 the left, and I know that’s the [trucking company] building
 which I knew it was late. There’s -- I mean, there’s no cars.
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

I know the office hours are closed, and it’s a trucking
company. So that kind of raised my suspicion on why the
vehicle is pulling out of there. . . . .

And then I got behind [the vehicle]. I actually had to slow
down a little bit and my lights were on the tag, so I was
able to type it in on NCIC. But before I typed it in, I
noticed, I’ve never seen a plate like that on a car. I mean,
I had seen it on trucks. It was TP-664 and so on, like 66462.
And when I ran it, it came back to plates not assigned to
vehicle.

[DEFENSE COUNSEL:] And what does the TP mean in
the TP66462?

[OFFICER BERRY:] At the time I was not -- I didn’t know
if TP meant anything special or -- but I just -- my thought,
theory through it was just came from a trucking company,
I’ve seen those on trucks. I mean, it just raised my
suspicion for it to be pulling out of there and the tag to be
on that vehicle.

[DEFENSE COUNSEL:] And you said the tags came back
unassigned?

[OFFICER BERRY:] Correct, yes, sir.

[DEFENSE COUNSEL:] Meaning that it was not assigned,
the tag was not assigned to a particular vehicle?

[OFFICER BERRY:] Correct.

[DEFENSE COUNSEL:] The tag was not invalid?

[OFFICER BERRY:] It came back on my computer, and if
it comes back not assigned, I’m under the impression it’s
not valid, it’s . . .

[DEFENSE COUNSEL:] You’re under the impression that
it’s not valid?
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

[OFFICER BERRY:] Well, I’m saying like what I’m looking
at on my computer is what it’s telling; do you know what
I’m saying?

[DEFENSE COUNSEL:] So does your computer tell you
that it was an invalid tag?

[OFFICER BERRY:] No, no, sir, no. It just said, plates not
assigned to vehicle. I’m sorry, maybe I misunderstood.

[DEFENSE COUNSEL:] And so the tag was not canceled?

[OFFICER BERRY:] It just said, plates not assigned to
vehicle. That’s the only thing it told me. It didn’t say
canceled, revoked, or anything of that, no, sir.

[DEFENSE COUNSEL:] Okay, it didn’t say revoked?

[OFFICER BERRY:] No. The transport plate did not, no,
sir.

[DEFENSE COUNSEL:] And your computer would
normally tell you if a tag is cancelled or --

[OFFICER BERRY:] Correct, if that tag was, yes, sir,
correct.

[DEFENSE COUNSEL:] It wasn’t expired?

[OFFICER BERRY:] No, sir, not the plate, no. . . . .

[DEFENSE COUNSEL:] The tag wasn’t altered in any
way?

[OFFICER BERRY:] No, sir.

[DEFENSE COUNSEL:] The tag didn’t show suspended?

[OFFICER BERRY:] No, sir.

[DEFENSE COUNSEL:] And it wasn’t canceled?
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 [OFFICER BERRY:] No. Just plates not assigned to [a]
 vehicle.

 ....

 [DEFENSE COUNSEL:] And it was a valid North Carolina
 plate?

 [OFFICER BERRY:] Like I said, sir, I’ve seen those tags on
 trucks. I’ve never seen them on a car, that’s why it brought
 my attention to it. When I ran it, it just came back plates
 not assigned to vehicle.

 ....

 [DEFENSE COUNSEL:] And so, because the tag came
 back unassigned, you stopped the vehicle?

 [OFFICER BERRY:] No, sir. It was included in my
 reasonable suspicion.

 [DEFENSE COUNSEL:] Well, what else was included in
 your reasonable suspicion?

 [OFFICER BERRY:] Well, when [the vehicle] pulled out of
 the closed business, like I said, [the vehicle] pulled out in
 front of me, and I noticed that I’ve seen those [transporter]
 tags on trucks before and [the vehicle] just pulled out of a
 trucking company, a business that I know to be closed at
 that time, okay. And we’ve had -- actually, it was exactly a
 month ago there was a stolen trailer on [Highway] 49.[4] I
 mean, I’m just including all of this into the fact that I
 thought that plate should not have been on that vehicle.
 Closed business.

 4 As Defendant does not challenge the trial court’s determination in Finding of Fact 3

that the theft was “recent,” we do not address any issue related to the validity of such a
characterization.
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

¶ 17 This testimony demonstrates Officer Berry’s purported reasonable articulable

 suspicion of criminal activity was based on, inter alia, the fact that Officer Berry had

 never seen a transporter plate on a motor vehicle other than a truck before and

 believed transporter plates could not be used on regular motor vehicles.

¶ 18 A transporter plate may be issued under the following circumstances:

 The Division may issue a transporter plate authorizing the
 limited operation of a motor vehicle in the circumstances
 listed in this subsection. A person who receives a
 transporter plate must have proof of financial
 responsibility that meets the requirements of Article 9A of
 this Chapter. The person to whom a transporter plate may
 be issued and the circumstances in which the vehicle
 bearing the plate may be operated are as follows:

 (1) To a business or a dealer to facilitate the manufacture,
 construction, rebuilding, or delivery of new or used truck
 cabs or bodies between manufacturer, dealer, seller, or
 purchaser.

 (2) To a financial institution that has a recorded lien on a
 motor vehicle to repossess the motor vehicle.

 (3) To a dealer or repair facility to pick up and deliver a
 motor vehicle that is to be repaired, is to undergo a safety
 or emissions inspection, or is to otherwise be prepared for
 sale by a dealer, to road-test the vehicle, if it is repaired or
 inspected within a 20-mile radius of the place where it is
 repaired or inspected, and to deliver the vehicle to the
 dealer. A repair facility may not receive more than two
 transporter plates for this purpose.

 (4) To a business that has at least 10 registered vehicles to
 move a motor vehicle that is owned by the business and is
 a replaced vehicle offered for sale.
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

(5) To a dealer or a business that contracts with a dealer
and has a business privilege license to take a motor vehicle
either to or from a motor vehicle auction where the vehicle
will be or was offered for sale. The title to the vehicle, a bill
of sale, or written authorization from the dealer or auction
must be inside the vehicle when the vehicle is operated
with a transporter plate.

(6) To a business or dealer to road-test a repaired truck
whose GVWR is at least 15,000 pounds when the test is
performed within a 10-mile radius of the place where the
truck was repaired and the truck is owned by a person who
has a fleet of at least five trucks whose GVWRs are at least
15,000 pounds and who maintains the place where the
truck was repaired.

(7) To a business or dealer to move a mobile office, a mobile
classroom, or a mobile or manufactured home, or to
transport a newly manufactured travel trailer, fifth-wheel
trailer, or camping trailer between a manufacturer and a
dealer. Any transporter plate used under this subdivision
may not be used on the power unit.

(8) To a business to drive a motor vehicle that is registered
in this State and is at least 35 years old to and from a
parade or another public event and to drive the motor
vehicle in that event. A person who owns one of these
motor vehicles is considered to be in the business of
collecting those vehicles.

(9) To a dealer to drive a motor vehicle that is part of the
inventory of a dealer to and from a motor vehicle trade
show or exhibition or to, during, and from a parade in
which the motor vehicle is used.

(10) To drive special mobile equipment in any of the
following circumstances:

a. From the manufacturer of the equipment to a facility of
a dealer.
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 b. From one facility of a dealer to another facility of a
 dealer.

 c. From a dealer to the person who buys the equipment
 from the dealer.

 N.C.G.S. § 20-79.2(a) (2019). Contrary to Officer Berry’s belief at the time of the

 traffic stop, the plain language of the statute indicates that transporter plates can be

 used on both trucks and motor vehicles. See id. We must decide whether Officer

 Berry’s genuine, but mistaken, belief that transporter plates could not be displayed

 on motor vehicles was reasonable and thus could be considered part of his reasonable

 articulable suspicion for the traffic stop.

¶ 19 In Heien v. North Carolina, the United States Supreme Court distinguished

 between reasonable and unreasonable mistakes of law: “The Fourth Amendment

 tolerates only reasonable mistakes, and those mistakes–whether of fact or of law–

 must be objectively reasonable. We do not examine the subjective understanding of

 the particular officer involved.” Heien v. North Carolina, 574 U.S. 54, 66, 190 L. Ed.

 2d 475, 486 (2014). In State v. Eldridge, we had the opportunity to apply Heien. See

 State v. Eldridge, 249 N.C. App. 493, 497-500, 790 S.E.2d 740, 743-44 (2016). We

 held that “in order for an officer’s mistake of law while enforcing a statute to be

 objectively reasonable, the statute at issue must be ambiguous.” Id. at 499, 740

 S.E.2d at 743.
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

¶ 20 The text of N.C.G.S. § 20-79.2(a) is clear and unambiguous. Transporter plates

 can be displayed on both cars and trucks, as the statute uses the phrase “motor

 vehicle” in the general sense. N.C.G.S. § 20-79.2(a) (2019). The requirements of the

 statute clearly apply to both cars and trucks and does not calculate into our

 reasonable suspicion analysis of this traffic stop merely because the transporter plate

 was displayed on a car.

¶ 21 The additional facts that the trucking company was closed and there was a

 recent trailer theft in the area are insufficient to support reasonable articulable

 suspicion, even when considered in totality. While similar factors have historically

 been cited in the totality of the circumstances analysis to help support establishment

 of reasonable articulable suspicion, they are insufficient in this context given the lack

 of other circumstances in this case. See Wardlow, 528 U.S. at 124, 145 L. Ed. 2d at

 576 (marks omitted) (noting the United States Supreme Court has “previously noted

 the fact that the stop occurred in a high crime area among the relevant contextual

 considerations” in a reasonable suspicion analysis, and holding “it was not merely

 [the] respondent’s presence in [a high crime area] that aroused the officers’ suspicion,

 but his unprovoked flight upon noticing the police”); State v. Fields, 195 N.C. App.

 740, 744, 673 S.E.2d 765, 768 (emphasis added) (“When determining if reasonable

 suspicion exists under the totality of the circumstances, a police officer may also

 evaluate factors such as traveling at an unusual hour . . . .”), disc. rev. denied, 363
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 N.C. 376, 679 S.E.2d 390 (2009); State v. Watkins, 337 N.C. 437, 442-43, 446 S.E.2d

 67, 70-71 (1994) (citing the business where the defendant’s vehicle was located being

 closed as one factor to support reasonable articulable suspicion, in addition to the fact

 it was 3:00 a.m. and there was an anonymous tip that “a suspicious vehicle” was at

 the location). The totality of the circumstances indicates the vehicle was exiting the

 parking lot of a closed building where there were no other cars present, in an area

 where there was a recent trailer theft. These circumstances are insufficient to

 support the reasonable articulable suspicion necessary to allow a lawful traffic stop.

 See State v. Horton, 264 N.C. App. 711, 716, 723, 826 S.E.2d 770, 774, 779 (2019)

 (holding the fact that a defendant was in front of a closed building where there were

 no other cars present in an area where a business across the street experienced prior

 break-ins was insufficient to support an officer’s reasonable articulable suspicion).

¶ 22 The Order states that Defendant’s vehicle displayed a transporter registration

 plate that came back as not assigned to any vehicle; the trucking company appeared

 to be closed as the office was dark and there were no other vehicles in the parking lot;

 and Officer Berry was aware of a recent trailer theft in the area. However, the trial

 court made no findings as to what activity by Defendant warranted Officer Berry’s

 suspicion. These circumstances, taken in their totality, were insufficient to support

 a reasonable articulable suspicion necessary to allow a lawful traffic stop. When

 coupled with the fact that the vehicle did not commit any traffic violations prior to
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 getting stopped, there exists insufficient findings that Defendant was committing, or

 about to commit, criminal activity. See Wardlow, 528 U.S. at 123, 145 L. Ed. 2d at

 576 (emphasis added) (“[A]n officer may . . . conduct a brief, investigatory stop when

 the officer has a reasonable, articulable suspicion that criminal activity is afoot.”).

 We hold the totality of the circumstances provided Officer Berry with nothing more

 than an “inchoate and unparticularized suspicion or hunch.” 5 United States v.

 Sokolow, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989) (marks omitted).

¶ 23 As Officer Berry’s mistake of law was not objectively reasonable under the

 standard set out in Heien and Eldridge, no reasonable articulable suspicion existed

 to support the stop of Defendant’s vehicle. Accordingly, the trial court erred in

 denying Defendant’s Motion to Suppress. We reverse the trial court’s order denying

 the Motion to Suppress and remand to the trial court for entry of an order vacating

 Defendant’s guilty plea. See State v. Cottrell, 234 N.C. App. 736, 752, 760 S.E.2d 274,

 285 (2014) (“Because [the] defendant’s consent to search his car was the product of

 an unconstitutional seizure, the trial court erred in denying [the] defendant’s motion

 5 We further note the trial court’s fifth conclusion, to the extent it suggests Officer

 Berry could stop the vehicle to ascertain whether there was a statutory violation or not, is
 not compatible with our Fourth Amendment jurisprudence. Our caselaw establishes that an
 officer may stop a vehicle when there is a reasonable articulable suspicion that criminal
 activity, such as violating a statute, has occurred or is about to occur. The officer could not
 initiate a traffic stop without any reasonable articulable suspicion “to ensure its compliance”
 with a statute.
 STATE V. JONAS

 2021-NCCOA-660

 Opinion of the Court

 to suppress. Accordingly, we reverse and remand to the trial court for entry of an

 order vacating [the] defendant’s guilty pleas.”).

 CONCLUSION

¶ 24 We have jurisdiction to hear the merits of Defendant’s appeal of his Motion to

 Suppress. Officer Berry’s mistake of law was not objectively reasonable because

 N.C.G.S. § 20-79.2 is unambiguous. The traffic stop was unconstitutional, and all

 evidence seized from the traffic stop must be suppressed. We reverse the Order and

 remand to the trial court for entry of an order vacating Defendant’s guilty plea.

 REVERSED AND REMANDED.

 Judges INMAN and HAMPSON concur.